IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| MICAH JEFFERY BROWN,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>    Defendant. | Case No. 6:16-cv-02247-AA<br>**OPINION AND ORDER** |

AIKEN, Judge:

Plaintiff Micah Jeffery Brown brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Supplemental Security Income ("SSI"). For the reasons set forth below, the Commissioner's decision is affirmed.

**BACKGROUND**

Plaintiff initially applied for Disability Insurance Benefits ("DIB"), but he was found not disabled. In May 2013, plaintiff applied for SSI, alleging disability due to anxiety, depression,

insomnia, ADHD, and bipolar disorder. His SSI application was denied initially and upon reconsideration. On April 15, 2015, plaintiff appeared at a hearing before an ALJ. At the hearing, plaintiff testified and was represented by an attorney. A vocational expert ("VE") also testified. The ALJ found plaintiff not disabled in a written decision issued May 28, 2015. After the Appeals Council denied review, plaintiff filed a complaint in this Court.

Plaintiff is 32 years old. He completed eleventh grade, but has not earned a diploma or a GED. Plaintiff alleges disability beginning May 9, 2013.[1] Plaintiff has sporadically performed a series of short-term and/or part-time jobs in the food service and labor industry. For example, he helped with his father's cleaning business, cleaned floors at a grocery store, and was a dishwasher and cook at a restaurant. None of those jobs lasted long enough to produce income at the substantial gainful employment level. At the time of the hearing, plaintiff lived at his parents' house with his infant son. He cared for the baby and for his three- year-old stepson during the day.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based upon proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (internal quotation marks omitted). The court must weigh "both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is subject to more than one

---

[1] Plaintiff initially alleged disability beginning June 1, 2001. However, plaintiff, through his representative, amended his disability onset date at the hearing.

Page 2 – OPINION AND ORDER

interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed, because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At step one, the ALJ found plaintiff had not engaged in "substantial gainful activity" since the alleged disability onset date. 20 C.F.R. §§ 416.920(a)(4)(i), (b). At step two, the ALJ found plaintiff had the following severe impairments: ADHD, major depressive disorder, generalized anxiety disorder versus bipolar disorder, and polysubstance use in reported remission. 20 C.F.R. §§ 416.920(a)(4)(ii), (c). At step three, the ALJ determined plaintiff's impairments, whether considered singly or in combination, did not meet or equal "one of the listed impairments" that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

The ALJ found plaintiff exhibited the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following non-exertional limitations: plaintiff could "understand, remember, and carry out simple, routine, repetitive tasks that involve no contact with the general public and no more than occasional contact with coworkers." Tr. 22;

Page 3 – OPINION AND ORDER

*see also* 20 C.F.R. § 416.920(e). At step four, the ALJ determined that, although plaintiff had past work experience, his record did not reflect earnings at the level of substantial gainful activity in the last 15 years. 20 C.F.R. §§ 416.920(a)(4)(iv), (f). Therefore, plaintiff had no past relevant work as defined by the regulations. At step five, relying on the opinion of the VE, the ALJ found plaintiff could perform the jobs of photocopy operator, vehicle cleaner, and labeler, and that such jobs exist in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v), (g)(1). Accordingly, the ALJ found plaintiff not disabled and denied his application.

## DISCUSSION

Plaintiff contends that the ALJ improperly discredited (1) plaintiff's subjective symptom testimony, (2) the opinion of plaintiff's treating physician, Jon Sobotka, M.D., and (3) competent third-party statements of plaintiff's mother, Debra Brown. Plaintiff also argues that the ALJ erred in posing a hypothetical to the VE and assessed an RFC that failed to adequately account for plaintiff's limitations in concentration, persistence, and pace, resulting in an improper non-disability determination at step five.

I.   *Plaintiff's Symptom Statements*

Plaintiff argues that the ALJ improperly rejected his statements regarding his disabling levels of anxiety and depression. When a claimant's medically documented impairments reasonably could be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony

*see also* 20 C.F.R. § 416.920(e). At step four, the ALJ determined that, although plaintiff had past work experience, his record did not reflect earnings at the level of substantial gainful activity in the last 15 years. 20 C.F.R. §§ 416.920(a)(4)(iv), (f). Therefore, plaintiff had no past relevant work as defined by the regulations. At step five, relying on the opinion of the VE, the ALJ found plaintiff could perform the jobs of photocopy operator, vehicle cleaner, and labeler, and that such jobs exist in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v), (g)(1). Accordingly, the ALJ found plaintiff not disabled and denied his application.

## DISCUSSION

Plaintiff contends that the ALJ improperly discredited (1) plaintiff's subjective symptom testimony, (2) the opinion of plaintiff's treating physician, Jon Sobotka, M.D., and (3) competent third-party statements of plaintiff's mother, Debra Brown. Plaintiff also argues that the ALJ erred in posing a hypothetical to the VE and assessed an RFC that failed to adequately account for plaintiff's limitations in concentration, persistence, and pace, resulting in an improper non-disability determination at step five.

I.   *Plaintiff's Symptom Statements*

Plaintiff argues that the ALJ improperly rejected his statements regarding his disabling levels of anxiety and depression. When a claimant's medically documented impairments reasonably could be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony

is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). "An ALJ may consider a range of factors in assessing credibility, including . . . prior inconsistent statements concerning the symptoms . . . and other testimony by the claimant that appears less than candid." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citing *Smolen*, 80 F.3d at 1284 and *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007)).

Plaintiff testified that he has disabling levels of anxiety and depression. Specifically, plaintiff stated that when he is depressed, he has a hard time functioning and motivating himself. When he is not depressed, his anxiety tends to hold him back. He reported his anxiety in social and work settings hinders his ability to maintain long-term employment. He also described concentration problems that stop him from staying on task. Plaintiff testified that he suffered from a lot panic attacks in 2014. Although plaintiff reported more difficulties with panic and feeling overwhelmed in 2014, he described improvement in more recent years. At the time of the hearing, plaintiff also stated that side effects from his medications—such as lack of sleep, increased depression, and weight loss—are sometimes so severe that he has considered stopping use of all of his medications. As the ALJ summarized, plaintiff further described his symptoms as:

> "[F]eeling terrified, 'possibly manic,' exhausted, unable to cope emotionally, having nearly paralyzing depression, being suspicious of others/distrustful, and having low motivation and low energy. Due to these symptoms, he stated he has severe difficulty and exhaustion even making a telephone call, brushing his teeth, eating a balanced diet, exercising, grooming himself, and leaving the house."

Tr. 22–23. The ALJ provided three reasons for rejecting plaintiff's symptom statements: (1) plaintiff's allegations about symptom severity were inconsistent with the medical evidence; (2)

Page 5 – OPINION AND ORDER

plaintiff's desire to care for his children, rather than his impairments, prevented him from completing vocational training and sustaining employment; and (3) plaintiff made inconsistent statements about his substance use.

With respect to plaintiff's reports of his disabling levels of anxiety and depression being inconsistent with the medical record, the ALJ noted that treating and examining sources described symptoms as stable and within normal limits. At the hearing, plaintiff conceded that he is doing better. For example, at the hearing, plaintiff stated 2014 was a particularly bad year for him but he has been able to manage his panic attacks better since then.

Plaintiff contends that the record shows he has consistently visited the emergency department for panic attacks. But the ALJ cited several emergency department records suggesting that plaintiff was not actually seeking treatment for anxiety. For example, during one visit when plaintiff reported symptoms of anxiety, he tested positive for amphetamines. The ALJ reasonably interpreted testing positive for amphetamines as suggesting something other than anxiety caused plaintiff's panic attacks. At other times, plaintiff visited the emergency department to request fills for his anxiety medications. Although he mentioned anxiety-related symptoms during those visits, he often was not experiencing those symptoms at the time of the doctor's visit. The ALJ logically determined that these visits to the emergency department were not evidence of acute, severe anxiety symptoms. The ALJ logically understood those records to suggest that anxiety was not the chief complaint that brought plaintiff to the emergency department. The emergency department notes also showed that plaintiff sometimes failed to follow up with recommendations or left against medical advice. The ALJ rationally inferred that those records undermined plaintiff's statements about symptom severity. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("We have long held that, in assessing a claimant's

credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment."). At one emergency room visit, plaintiff sought documentation for walking out of a meeting with a probation officer. One possible inference from that chart note is that plaintiff's severe anxiety symptoms caused him to leave the probation meeting, and he was simply following rules regarding documentation. But the ALJ reasonably reached an alternative inference: that the purpose of plaintiff's emergency department visit was to cover up behavior that could potentially be of consequence to plaintiff's probation terms, and not primarily to deal with his allegedly disabling anxiety. The foregoing records plausibly support the conclusion that plaintiff often went to the emergency room for reasons other than to deal with acute anxiety symptoms. That is a clear, convincing reason to conclude that plaintiff's symptoms were not as extreme as he described.

The ALJ also cited plaintiff's Community Outreach treatment notes, which consistently report that plaintiff's symptoms were stable. *See, e.g.*, Tr. 205 (reporting that plaintiff was "doing well" managing his symptoms with medications); Tr. 208 (noting that he was still "doing well" even "after lots of missed doses"). When the Community Outreach records report more difficulty, the trigger is generally situational (a breakup, jail for a probation violation) or related to substance use. Moreover, the ALJ noted that, during the same period as the Community Outreach visits, plaintiff also participated in vocational rehabilitation services, where he was assessed as doing well and demonstrating stability with medications and counselling. Following the completion of vocational rehabilitation services, plaintiff reported that he "has a pretty good supportive environment and likes working" as a dishwasher. Tr. 469.

I acknowledge that improvements or stability in mood and mental health may not always be sufficient to show that an individual retain the capacity to work. *See Garrison v.*

*Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms . . . [and] with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in the workplace."). However, the record in this case, as noted by the ALJ, is replete with instances where plaintiff reported he was doing well both with and without medications. The ALJ reasonably found plaintiff's statements about symptom severity inconsistent with medical records and other records consistently suggesting that he was stable and doing well.[2]

The ALJ also found that plaintiff did not engage or follow up with vocational training, work, or education because he is taking care of two small children. To be sure, plaintiff stated during the hearing that he spends his day taking care of his children, enjoys spending time with them, and does not get tired of it even though it is hard work. But, critically, the ALJ did not provide reasons or point to evidence in the record to show that plaintiff's desire to spend time with his children *caused* him to fail to engage and follow up with vocational training, work, or education. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (requiring an ALJ's reasoning to be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."). Accordingly, this is not a convincing reason to discredit plaintiff's subjective symptom statements.

Finally, the ALJ found plaintiff made inconsistent statements about his substance use. The ALJ noted that plaintiff denied ongoing use, but the records showed otherwise. The ALJ

---

[2] I note that the ALJ discredited plaintiff's symptom testimony because it was inconsistent with the medical record, not because there was an absence of objective medical proof of symptom severity.

Page 8 – OPINION AND ORDER

pointed to plaintiff's treating sources who have noted his "alcohol use and erratic medication use is derailing his ability to stay stable and make progress." Tr. 24 (citing Tr. 220). For example, an April 2013 Benton County Health ("BCH") note states that plaintiff has been unable to stop drinking on his own and is causing a lot of problems for him. But other medical records suggest that drinking is not a problem and that plaintiff has only a few drinks per week. To the extent these statements are inconsistent, they are a convincing reason to give less weight to plaintiff's statements about whether he is using alcohol or drugs. But because the ALJ did not explain why inconsistencies in this area are a reason to disbelieve all of plaintiff's statements about his anxiety and depression, those statements alone cannot be the basis for discrediting *all* of plaintiff's symptom statements. Plaintiff's inconsistent statements about substance abuse are not a convincing reason to give less weight to his symptom testimony.

Two of the ALJ's reasons for discrediting plaintiff's symptom testimony are legally insufficient. But because the inconsistencies between plaintiff's testimony and the medical record is a legally sufficient reason for giving less weight to that testimony, those errors were harmless. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) ("[T]he relevant inquiry in this context is not whether the ALJ would have made a different decision absent any error . . . but it is whether the ALJ's decision remains legally valid, despite such error."). Thus, the ALJ permissibly gave little weight to plaintiff's statements about the severity of his symptoms.

II. *Dr. Sobotka's Medical Opinion*

Plaintiff argues that the ALJ improperly rejected the opinion of Dr. Sobotka, his treating provider. There are three types of medical opinions in Social Security disability cases: those of treating, examining, and reviewing physicians. *Holohan v. Massanari*, 246 F.3d 1195, 1201–02

Page 9 – OPINION AND ORDER

(9th Cir. 2001). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* at 1202; *see also* 20 C.F.R. § 404.1527(d). Where there is a conflict between two medical opinions, the ALJ may rely on the medical opinion of a non-treating doctor instead of the contrary opinion of a treating doctor only if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record. *Holohan*, 246 F.3d at 1202. However, "the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (alteration normalized). Medical opinions may address both the nature of the plaintiff's limitations and the ultimate issue of disability, *i.e.*, whether the plaintiff is capable of any work, given her limitations. *Id.* Although the ultimate decision regarding disability is reserved to the Commissioner, 20 C.F.R. § 404.1520(e)(1), the rules governing consideration of medical opinions apply with equal force to opinions on the ultimate issue of disability. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ must "explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another[.]" *Garrison*, 759 F.3d at 1012.

Dr. Sobotka was plaintiff's treating physician at BCH. He took over plaintiff's treatment in May 2014, continuing treatment started by other prescribers at BCH. In an April 2015 letter to plaintiff's attorney, Dr. Sobotka reported that plaintiff had ADHD and Generalized Anxiety Disorder. Specifically, Dr. Sobotka opined:

> [Plaintiff] does and would continue to have problems being consistent and efficient working with the public; to have problems completing routine or complex tasks in adequate and timely fashion; to be exquisitely sensitive to criticism from any source; to have difficulty maintaining appropriate concentration throughout an 8 hour day; to struggle to not be excessively absent (usually for social reasons).

Tr. 492. Dr. Sobotka noted, "[t]here is much disruption in [plaintiff's] life which exacerbates these diagnoses and creates demoralization, frustration, and discouragement." *Id.* He also stated that plaintiff's "impaired functioning is a combination of the severity of his symptoms, the limitations of the medications, and the persistent immense weight of his family and social problems." *Id.*

After acknowledging that Dr. Sobotka has a treating relationship with plaintiff, the ALJ rejected Dr. Sobotka's opinions because they were not supported by any clinical findings or medical records, were based on plaintiff's self-reports, and were inconsistent with the record as a whole, including with Dr. Sobotka's own lab and treatment notes.

I begin with the ALJ's determination that Dr. Sobotka did not support his conclusions with clinical findings and medical records. "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray*, 554 at 1228. Dr. Sobotka did not provide clinical support for his opinion that plaintiff would have problems being consistent and efficient working with the public. While Dr. Sobotka's diagnosis of ADHD and generalized anxiety disorder could explain why plaintiff has trouble completing routine and complex tasks and difficulty maintaining concentration, Dr. Sobotka did not explain how he quantified plaintiff's limitations in these areas. Dr. Sobotka opined that plaintiff's condition stems from a combination of his impairments and from situational stressors such as plaintiff's social and family problems, but he did not explain the extent to which the underlying impairments rendered plaintiff unable to work. In sum, the April 2015 letter is conclusory and unsupported by clinical findings. That is a specific, legitimate reason to give less weight to Dr. Sobotka's opinion.

Next, the ALJ pointed out that Dr. Sobotka relied on plaintiff's self-reports in assessing his symptoms. A specific and legitimate reason for rejecting a treating physician's opinion is that the opinion is premised on a claimant's subjective complaints, which the ALJ has properly discredited. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). It is clear, upon reviewing the record, that Dr. Sobotka heavily relied on plaintiff's self-reports during treatment. This is evident from Dr. Sobotka's numerous "SUBJECTIVE" progress notes noting plaintiff's moods, reports of pain and health, life challenges, sleep patterns, and reactions to medications. As explained in the previous section, the ALJ provided clear, convincing reasons to give less weight to plaintiff's statements about his symptoms. Thus, the ALJ permissibly rejected Dr. Sobotka's opinion to the extent it relied on plaintiff's self-reports.

Finally, the ALJ found that Dr. Sobotka's opinions were inconsistent with the medical record as a whole, including with Dr. Sobtoka's own treatment notes. "A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider." *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014). Upon review of the record, I find that the limitations set out in the April 2015 letter are inconsistent with Dr. Sobotka's treatment notes.

For example, during an October 20, 2014 visit, Dr. Sobotka noted that plaintiff was "functioning better despite major stresses[,]" including his RV falling apart and his wife having problems staying sober. Tr. 316. The progress notes from this visit also show an overlapping problem with sleep. This treatment note is inconsistent with the April 2015 letter because it shows that plaintiff *could* handle routine functions and work efficiently, despite major stressors, thereby contradicting Dr. Sobotka's conclusion that plaintiff's "mental health issues interfere with and preempt adequate and effective decisions and energy to mitigate or significantly

Page 12 – OPINION AND ORDER

diminish" his problems. Tr. 492. Similarly, during another visit on September 4, 2014, Dr. Sobotka assessed an improvement in plaintiff's concentration and anxiety and high motivation to function well for his family. Tr. 330–31. That assessment overlapped with a period when appliances in plaintiff's home were broken and he was living in a temporary RV home. *Id.* This again shows that plaintiff's life and family stress do not render him unable to concentrate or function well overall.

The ALJ further noted that the counselling notes from BCH did not include complete mental health status examinations or signs of significant mental health conditions. The ALJ noted that, instead, they showed that plaintiff's symptoms were generally stable, with mental status findings within normal limits and also reflected an improvement in plaintiff's symptoms. For example, during a visit in December 2014, Dr. Sobotka noted plaintiff "continues to benefit from meds" and that "[h]e is functioning well with the challenges" of his wife struggling with her recovery and the sole responsibility of childcare. Tr. 474. Subsequently, in February 2015, Dr. Sobotka reported "[plaintiff] is active and getting things done." Tr. 472. The ALJ reasonably found Dr. Sobotka's opinion inconsistent with contemporaneous treatment notes, inadequately supported by clinical findings, and impermissibly based on plaintiff's self-reports. Those are specific, legitimate reasons to reject Dr. Sobotka's opinion. Thus, the ALJ did not err in giving no weight to the medical opinion of Dr. Sobotka.

III.   *Ms. Brown's Lay Witness Statements*

Plaintiff next challenges the ALJ's treatment of the lay witness statements of his mother, Mr. Brown. An ALJ must provide germane reasons supported by substantial evidence in the record to discount lay witness testimony regarding a claimant's limitations. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). One germane reason for which an ALJ may discount lay

testimony is that it conflicts with the medical evidence. *Id.* Another germane reason to discredit lay testimony is that it is substantially similar to a claimant's validly discredited allegations. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2012). An ALJ's erroneous evaluation of lay evidence is harmless where the lay statement is contradicted by "more reliable medical evidence that the ALJ credited." *Molina*, 674 F.3d at 1119. However, an ALJ errs when he discounts a lay witness' "*entire* testimony because of inconsistency with evidence in the record, when the ALJ has divided the testimony into distinct parts and determined that only one part of the testimony is inconsistent." *Dale v. Colvin*, 823 F.3d 941, 945 (9th Cir. 2016).

In a third-party function report, Ms. Brown stated that plaintiff is unable to "sustain the slightest effort" and that "[i]t takes a huge amount of reward to get him focused." Tr. 173. She reported that plaintiff has extreme anxiety and "doesn't want to go out the door many times." *Id.* She described plaintiff as "easily led off in different directions and cannot seem to stabilize as a person." *Id.* Among other impairments, Ms. Brown identified that plaintiff has trouble with concentrating, completing tasks, understanding, and following instructions. When asked for how long plaintiff could pay attention, Ms. Brown responded that plaintiff could pay attention for "a minute, or all day online." *Id.* She also identified that plaintiff does "poorly" when following written instructions and does not finish what he starts. *Id.* Ms. Brown identified that plaintiff's hobbies among other things include computer and drawing but he "can't make a career of it [because he] can't handle deadlines or even hardly get started." Tr. 177. She noted that plaintiff does not handle stress well and does not have a routine. Ms. Brown also noted that plaintiff was on medication at the time, but was not experiencing any side effects. With respect to plaintiff's social interactions, Ms. Brown stated that plaintiff gets along with authority figures "fairly well,"

with some trouble in the past, Tr. 178, and that he interacts with others daily through online chatting, over the phone, or meeting them in person, Tr. 177.

The ALJ rejected all of Ms. Brown's statements because she found Ms. Brown's statements to be inconsistent with the medical evidence in the record, just like plaintiff's statements about his symptoms. The ALJ also noted that Ms. Brown was unfamiliar with the case record and the Social Security regulations and that plaintiff has had a long history of religious disagreements with his parents. Ms. Brown's familiarity with the case record and regulations is not relevant to whether her statements about plaintiff's symptoms should be given weight. And the ALJ did not explain why religious disagreements provide a reason to discredit a lay witness' description of symptoms she personally observed. To the extent that Ms. Brown's statements tracked plaintiff's statements about his own symptoms, however, the ALJ's reliance on inconsistencies with the medical record is a germane reason to discredit her testimony.

But Ms. Brown also made statements about plaintiff's concentration, persistence, and pace that do not overlap with plaintiff's statements. These statements include, as mentioned above, testimony about plaintiff's concentration, ability to follow instructions, and ability to interact and handle social situations. Plaintiff did not testify about concentration or following instructions during his hearing. With respect to the statements regarding plaintiff's social skills, Ms. Brown's statements *contradict* plaintiff's testimony at his hearing. The ALJ failed to provide germane reasons supported by substantial evidence in the record to give little weight to Ms. Brown's testimony on these subjects.

Even though the ALJ erred in disregarding Ms. Brown's statements in their entirety, however, this error is harmless. An error is harmless when it is "inconsequential to the ultimate nondisability determination in the context of the record as a whole." *Molina*, 674 F.3d at 1122

(internal quotation marks omitted). The claimant has the burden to prove any error is harmful, and reversal requires a determination of prejudice. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). The portion of Ms. Brown's testimony improperly rejected by the ALJ is *consistent* with the ALJ's imposition of limitations in the RFC designed to address plaintiff's interaction with the general public, stay on task, and follow instructions. The error in evaluating Ms. Brown's testimony was therefore inconsequential to the ultimate disability determination.

IV. *RFC Determination*

The ALJ found plaintiff had the RFC to perform a full range of work at all exertional levels but with a limitation to "simple, routine, repetitive tasks that involve no contact with the general public and no more than limited occasional contact with coworkers." Tr. 22. Plaintiff argues that a limitation to "simple, routine, repetitive tasks" does not adequately account for his moderate difficulties with concentration, persistence, and pace.

The RFC is the most a person can do, despite his physical or mental impairments. 20 C.F.R. § 416.945(a). In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. *Id.*; SSR 96-8p, 1996 WL 374184, *1 (July 2, 1996). In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

Although Ninth Circuit law on this point is not crystal clear, a limitation to simple tasks sometimes adequately incorporates into the RFC moderate difficulties with concentration persistence, and pace. *Stubbs–Danielson*, 539 F.3d at 1173. Because physicians often do not suggest specific functional limitations, the ALJ often must *translate* broad limitations into "concrete [functional] restrictions[.]" *Id.* at 1174. In *Stubbs-Danielson,* the Ninth Circuit held that a limitation to simple tasks adequately accounted for the plaintiff's moderate limitation in pace because the plaintiff's physician opined that she had slow pace, but could nonetheless perform simple work. *Id.* Furthermore, the court held that the medical record did not support the addition of any particularized functional limitation other than those included in the RFC and hypothetical to the VE. *Id.* at 1175.

"*Stubbs–Danielson* did not issue a blanket rule; instead, the court carefully parsed the medical evidence to determine whether the 'simple tasks' restriction accounted for the limitations found by the ALJ and supported by substantial evidence in the record." *Senser v. Colvin,* 2017 WL 253847, *7 (D. Or. Jan. 19, 2017). In *Senser*, the plaintiff argued that the limitation to unskilled work in the RFC did not adequately account for her moderate difficulties with concentration, persistence, pace, and social functioning. *Id.* at *6. Noting that a restriction to unskilled work would not *always* account for moderate limitations in concentration, persistence, and pace, I held that on the factual record presented in *Senser*, an unskilled-work limitation was a reasonable translation of the plaintiff's moderate limitations in those areas. *Id.* at *7. In that case, the only physician who assessed moderate limitations in concentration, persistence, and pace had opined that plaintiff could perform "reliable work activity" and other physicians either did not opine on the issue or assessed mild limitations in the area. *Id.* Thus, I

concluded that ALJ's restrictions to unskilled work adequately addressed plaintiff's limitations. *Id.*

By contrast, in *Moore v. Berryhill*, 2017 WL 3642102, *6 (D. Or. Aug. 24, 2017), the ALJ's assessment of moderate difficulties in concentration, persistence, and pace rested on the opinion of a state psychologist who evaluated the plaintiff's ability to parent given severe impairments due to bipolar depression and borderline intellectual functioning. But that psychologist had specifically stated that his opinion on the plaintiff's psychological condition was "not intended to address other non-related issues, such as eligibility for SSI benefits, or employability." *Id.* I remanded that case to obtain additional evidence regarding whether the "simple, routine tasks" limitation in the RFC adequately accounted for plaintiff's cognitive limitations. *Id.*

In determining plaintiff's RFC, the ALJ heavily relied on the opinions of examining physicians J. Mark Wagener, Ph.D., and Frank G. Lahman, Ph.D. Dr. Wagener conducted a consultative psychological exam of plaintiff in April 2010 and diagnosed him with bipolar disorder. Dr. Wagener found plaintiff's "ability to understand and remember instructions appears to be mildly impaired. His ability to sustain concentration and maintain attention to persist at tasks also appears to be significantly impaired by depression and anxiety." Tr. 313. The ALJ credited Dr. Wagener's report based on its depth and its consistency with the evidence in the record. Noting that the term "significant" was not defined in the report, the ALJ expressly found that a simple, routine, repetitive work limitation accounted for the concentration and persistence problems documented by Dr. Wagener. Tr. 24.

Dr. Lahman, plaintiff's second consultative examiner, conducted a psychodiagnostic exam of plaintiff in April 2015. Dr. Lahman found plaintiff "demonstrated ability to understand

and comply with instructions with reasonable effectiveness" and "showed the ability to concentrate, pay attention, and persist at tasks," albeit sometimes at the expense of accuracy. Tr. 483. Dr. Lahman assessed plaintiff's ADHD, depression, and anxiety as having a mild impact on plaintiff's thought process and abilities. With respect to social functioning, Dr. Lahman opined plaintiff suffers from moderate impairment. Dr. Lahman noted that assessment of plaintiff's ability to function in a work setting was "more tenuous" because plaintiff would have more difficulty when his "baseline environment (marital, child-rearing, housing, personal, finances, mental & physical health) . . . deterioriate[s.]" *Id.* Based on Dr. Lahman's methodologies, his specialty in the area, and the consistency of the findings with the evidence in the record, the ALJ accorded great weight to Dr. Lahman's opinion. *See* 20 C.F.R. § 416.927(c)(5) (more weight is to be accorded to a specialist's opinion about medical issues related to their specialty area than a source who is not a specialist.). The ALJ also noted that Dr. Lahman's assessment occurred within the relevant period under review.

The ALJ was bound to incorporate into the RFC the fully credited opinions of Dr. Wagener and Dr. Lahman. *See, e.g., Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (once accepted as trustworthy, an ALJ must account for the properly credited testimony). Plaintiff argues that the ALJ failed to properly account for his moderate limitations in concentration, persistence, and pace, thus resulting in an improper RFC determination and error at step five in posing the hypothetical to the VE.

In this case, the medical evidence supports the conclusion that the restriction to simple, routine, repetitive work adequately accounted for plaintiff's limitations. The ALJ's findings should be upheld if supported by inferences reasonably drawn from the record; if evidence exists to support more than one rational interpretation, the court is bound to uphold that interpretation.

*Batson*, 359 F.3d at 1196. In other words, any "coin-flips" as to an issue of factual interpretation must be granted to the ALJ. Because the term "significant" is not defined in the consultative exam and the ALJ's interpretation appears to be based on a reasonable reading of the record, the ALJ did not err in translating Dr. Wagener's findings into a simple work limitation. The simple, routine, repetitive work restriction is also consistent with Dr. Lahman's report. Dr. Lahman assessed only mild baseline limitations in concentration, persistence, and pace, but noted that family and other life stressors would likely further impair functioning. The ALJ reasonably accounted for that impairment by limiting plaintiff to simple, routine, repetitive work.

The ALJ's RFC determination that plaintiff can perform simple, routine, repetitive tasks with only limited contact with coworkers and no contact with the general public accounts for the limitations properly credited by the ALJ. Furthermore, there are no specific limitations in Dr. Wagener and/or Dr. Lahman's opinions that the ALJ disregarded in formulating the RFC. Thus, the ALJ did not err in formulating the RFC or in posing a hypothetical to the VE at step five.

## CONCLUSION

The Commissioner's decision is AFFIRMED and this case is dismissed.

IT IS SO ORDERED.

Dated this 21st day of February 2018.

Ann Aiken
United States District Judge